possession of the persons named, with intent to use it as a means of committing a public offense, certain property, viz.: tickets, cards, books, documents, tables, devices, etc. Considering the objections which are now urged for the first time on appeal against the introduction of this paper, it is quite clear that they are of no value; and further, that the original objection that it did not pertain to the offense charged against the defendant has no value, for the reason that an examination of the premises was germane to the subject of the indictment, viz.: the vending of a lottery ticket, which was the charge against the defendants, and which might be established in part by evidence found upon the premises affecting the business of selling lottery tickets there." * * *

*Charles W. Brooke*, for the appellants.

*William C. Beecher*, for the respondents.

Opinion by BRADY, J.; DAVIS, P. J., and DANIELS, J., concurred.

Judgment affirmed.

---

JEREMIAH CANNON, RESPONDENT, v. THE NORTH-WESTERN MUTUAL LIFE INSURANCE COMPANY, APPELLANT.

*Policy of insurance — right of the party insured to assign it — law of another State— it is presumed to be the same as that of this State, though the latter differs from that held by the Supreme Court of the United States — proofs of loss may be made by a person interested, though they relate to personal transactions with the deceased— Code of Civil Procedure, sec. 829.*

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict directed by the court.

This action was brought upon a policy of insurance made and issued by the appellant upon the life of one James H. Lloyd, for the benefit of himself, in the sum of $7,500. The appellant is a Wisconsin corporation, having its office and doing business at Milwaukee, in that State, and having an agency in the city of New York. The policy was made by the appellant in January, 1878, and was delivered to Lloyd by its agent in the city of New York. In July, 1878, Lloyd assigned the policy of insurance to Gaylord Watson, of Brooklyn, New York, by an absolute assignment under

his hand and seal. The premiums on the policy were duly paid from time to time at the New York agency of the appellant. In January, 1882, Lloyd died at San Francisco, California, and thereupon his assignee, Watson, presented proofs to the appellant of the death of Lloyd and of his (Watson's) insurable interest, which showed in substance that at the time of the assignment to him Lloyd was indebted to Watson in the sum of $6,104.10, and that in consideration of such indebtedness, and of future credits and loans to be made to him, the assignment of the policy was executed and delivered by Lloyd; that he thereafter extended the time of payment, and sold and delivered goods on credit and advanced money, and that Lloyd remained and continued indebted to him until his death, and at the time of his death such indebtedness amounted to $7,317.72, over and above all payments, discounts, offsets, counterclaims or allowance; and that there was at the time of the presentation of the proofs due to him from Lloyd the sum of $7,463.64, with interest from that date; and that he (Watson) had held and owned the policy since the same was assigned to him, and he annexed thereto a copy of his account with Lloyd, which he declared to be just and true in all respects. The appellant refused to regard the proof as sufficient, on the ground that certified copies of letters of administration or letters testamentary of the estate of Lloyd were not produced. Subsequently Watson assigned, by an instrument absolute in its terms, the claim against the appellant on such policy to the plaintiff Jeremiah Cannon, who, at the same time, executed to Watson an instrument reciting that such assignment had been made to him, and promising to pay to said Watson the amount collected or recovered upon said policy when the same should be collected and received by him.

The defendant's counsel moved to dismiss the complaint on the grounds: 1st. That the plaintiff was not the real party in interest. 2d. That the plaintiff did not furnish due proof of insurable interest in Gaylord Watson. 3d. That the plaintiff had not proved a demand upon the company to pay the policy. The court denied the motion and defendant's counsel duly excepted. Thereafter a verdict was directed in favor of the plaintiff.

The court at General Term said: "If it be conceded that the policy sued upon is a Wisconsin contract, no evidence was offered

to show that by any law of that State the assignment to Watson was void in the absence of evidence of insurable interest in him. If anything is to be assumed on that subject the presumption is, in the absence of proof, that the law of Wisconsin is the same as the law of this State. But the question in this action is governed altogether by the law of this State, where it is settled by authority that a policy of insurance upon the life of a party is assignable like any other chose in action, and that an assignee may hold and enforce a policy, even without showing any insurable interest in himself. (*St. John* v. *American Mutual Ins. Co.*, 13 N. Y., 31; *Living* v. *Domett*, 25 Hun, 150.)

"The rule of this State is, however, to some extent in conflict with that held by the Supreme Court of the United States, in *Warnock* v. *Davis* (104 U. S., 775), which holds, in substance, that a policy of insurance on the life of a person cannot be assigned to another who has no insurable interest in his life; and it is argued that in the absence of affirmative proof of what is the law of Wisconsin, this court should presume and hold that the rule in that State conforms to that of the Supreme Court of the United States rather than to that of this State. However plausible this argument may seem, we are of opinion that it is not sound, but that the law of the forum in which the case was tried must govern the question. It appears, moreover, by the letter of the president of the company, that no point was made of the lack of insurable interest, but only, in substance, that letters testamentary or of administration of Lloyd's estate should be produced, because the amount payable upon the policy was in excess of the amount of indebtedness to Watson, the assignee. This virtually conceded an insurable interest to the full extent of the indebtedness, and asserted the right of the company to demand a proper receipt or discharge of the claim of such representative of Lloyd for the amount in excess of Watson's interest. The position of the company in this respect was untenable, because the assignment to Watson was absolute of the whole claim under the policy, and it would have been fully released by payment to Watson or by recovery in his name.

"The objection, that the proofs could not be verified by Watson, was not taken by the company when they were presented, nor as it would seem at any time until the trial. We are of opinion that it

was properly overruled because the provision of the Code referred to, which excludes the testimony of a party to an action upon the trial thereof as to any transaction had with a deceased person, has no application to the presentation of proofs of death by the assignee of a policy of insurance. Any person, however much interested and however necessary it may be to establish transactions between him and his deceased assignor, may prepare and present such proofs and verify the same as required by the company, and as a general rule he is the person who must do so."

*Edward Solomon*, for the appellant.

*H. G. Hull*, for the respondent.

Opinion by DAVIS, P. J.; MACOMBER, J., concurred.

Present — DAVIS, P. J., and MACOMBER, J.

Judgment affirmed.

---

# THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* THEODORE WARE, APPELLANT.

*Evidence — cross-examination of witness — answers of the witness to questions which are put to discredit him cannot be contradicted, if they relate only to collateral matters.*

APPEAL from a judgment of the Court of General Sessions of the county of New York, convicting the defendant of the crime of robbery.

The evidence tended to show that three men, of whom the defendant probably was one, entered the laundry of the complaining witness, who is a Chinaman, and by threats and force robbed him of his money on October 23, 1882.

After the case was rested by the people, the defendant was sworn as a witness in his own behalf; on his cross-examination he was asked the following questions by the district attorney:

Q. Now, on the nineteenth day of October — this last October — did not you enter the premises 155 Forsyth street, together with two other men, at eleven o'clock at night, and did not you and those men present a pistol at the head of a Chinaman by the name of Hong Wah? A. No, sir. Q. One moment — did not you and the